IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

Civil Case No.:

LOUIS LEO IV, as an individual and on : 
behalf of all others similarly situated, :
:
    *Plaintiff,* :
:
vs. :
:
CLASSMONEY.NET, :
COLLEGEEDUCATIONINFORMATION.C :
OM, and VENTRIX ADVERTISING, INC. :
d/b/a VENTRIXADVERTISING.COM, a :
California and Nevada Corporation, :
:
    *Defendants.*
_____

**CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES
AND INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 *et seq.*,
THE TELEPHONE CONSUMER PROTECTION ACT**

Plaintiff, LOUIS LEO IV, ("Plaintiff") individually, and on behalf of all others similarly situated, by and through his undersigned counsel, and pursuant to all applicable *Federal Rules of Civil Procedure*, hereby files this Class Action Complaint, and alleges against Defendants, CLASSMONEY.NET, LLC, COLLEGEEDUCATIONINFORMATION.COM, and VENTRIX ADVERTISING, INC., (collectively "Defendants"), as follows:

**I. INTRODUCTION**

1. Plaintiff brings this action against Defendants to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2. Plaintiff brings this claim pursuant to 47 U.S.C. §§ 227(b) and the associated Federal Communications Commission ("FCC") Regulations, for unlawful, unsolicited calls made to the cellular telephones of Plaintiff and others using an automatic telephone dialing

system and an artificial or prerecorded voice.

## JURISDICTION AND VENUE

3. The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747 (2012). The Court further has subject matter jurisdiction over this action pursuant to the Class action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (i) at least one member of the putative class is a citizen of a state different from one of the Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that section apply to this action. Plaintiff is a citizen of Florida and at least one Defendants can be considered a citizen of Nevada and California for diversity purposes. Based upon information and belief, all individual members of the Defendants are citizens of states other than Florida. Based on publicly available information, the citizenship of each individual member of the Defendants cannot be confirmed at this time. The citizenship of each individual member of the Defendants will be determined throughout the course of discovery.

4. Plaintiff alleges that based on the anticipated number of unlawful calls made by Defendants, the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below.

5. This Court has personal jurisdiction over Defendants because they conduct significant amounts of business in this District and the unlawful conduct alleged herein occurred in, was directed to, and/or emanated from this District.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants conduct business in this District, the improper conduct alleged in this Complaint occurred in this District, and the injury arose in this District. Venue is additionally proper because Plaintiff resides

in this district.

### III. PARTIES

7. Plaintiff, LOUIS LEO IV, is a natural person and a resident of Palm Beach County, Florida. At all relevant times Plaintiff was the sole user, subscriber, owner, and possessor of the cellular telephone at issue.

8. Defendant, CLASSMONEY.NET is a parent, related, and/or affiliate company of Defendants COLLEGEEDUCATIONINFORMATION.COM and VENTRIX ADVERTISING, INC. At this point in time, Plaintiff has been unable to locate publicly available information regarding the whereabouts and corporate structure of Defendants, CLASSMONEY.NET and COLLEGEEDUCATIONINFORMATION.COM. However, once discovery commences, Plaintiff believes there will be viable means to obtain such information, including from third-parties.

9. Defendant, COLLEGEEDUCATIONINFORMATION.COM is a parent, related, and/or affiliate company of Defendants CLASSMONEY.NET and VENTRIX ADVERTISING, INC. At this point in time, Plaintiff has been unable to locate publicly available information regarding the whereabouts and corporate structure of Defendants, CLASSMONEY.NET and COLLEGEEDUCATIONINFORMATION.COM. However, once discovery commences, Plaintiff believes there will be viable means to obtain such information, including from third-parties.

10. Defendant VENTRIX ADVERTISING, INC. was a registered corporation existing under the laws of the State of California and the State of Nevada, with its principle place of business located at 297 Kingsbury Grade, Ste 100, Mail Box 4470, Lake Tahoe, NV 91302. Based on information and belief, VENTRIX ADVERTISING INC. has a Registered Agent named

"Northwest Registered Agent, Inc.," whose address is 906 W. 2nd Avenue, Ste 100, Spokane, WA 99201. VENTRIX ADVERTISING INC. also lists addresses at 3993 Howard Hughes Pkwy, Suite 200, Las Vegas NV 89169 and 2049 Century Park E., Suite 740-N, Los Angeles, CA 90067. Based upon information and belief, VENTRIX ADVERTISING, INC., is a related and/or affiliate company of, and marketer for, Defendants CLASSMONEY.NET and COLLEGEEDUCATIONINFORMATION.COM.

11. Additionally, although not named as parties, the websites "edumoney.net" and "applyformoney.org," are likely agents, principles, and/or affiliates of Defendant, CLASSMONEY.NET, as edumoney.net, applyformoney.org, and CLASSMONEY.NET all lead to the same exact webpage. A screen shot of this webpage is shown below:



12. When the yellow "Free Grants- Editor's Pick" rectangular tab on the webpage referenced above is clicked (in paragraph 10), the user is subsequently forwarded an application requesting information regarding the user's educational background as shown below:



13. In the application, there is a "Privacy Policy" hyperlinked at the bottom right of the screen. Clicking on the Privacy Policy forwards the user to www.collegeeducationinformation.com as shown below:



14. The Registrant of, and marketer for, CollegeEducationInformation.com is VentrixAdvertising.com, or "Ventrix Advertising, Inc."

15. Based on the aforementioned information and investigation of Counsel linking and otherwise connecting the named Defendants, it is likely that the Defendants are agents and/or affiliates, of one another, have common ownership, and/or acted in concert and all responsible for TCPA violations that serve as the basis of this Complaint. Ventrix Advertising, Inc. participated in the transmission of the TCPA violation alleged in this Complaint.

16. Plaintiff alleges that, at all times relevant herein, Defendants and their subsidiaries, affiliates, vendors, and other related entities, as well as their respective officers, directors, employees, were the agents, servants and employees of Defendants and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

## IV. FACTUAL ALLEGATIONS

17. Defendant CLASSMONEY.NET, is a website who is engaged in the practice of advertising "Education Grants" to the public. As mentioned above, CLASSMONEY.NET is affiliated with the two Defendants named in this Complaint.

18. Defendants, directly and/or through the use of contracted for agents or vendors, solicit consumers as prospective customers by engaging in the systematic business practice of placing uninvited telemarketing calls to potential customers, and then attempting to sell them services.

19. In order to obtain more customers, Defendants use the invasive and illegal method of telemarketing solicitation known as "robocalling."

20. Defendant's use "robocalling" in order to gain an unfair competitive advantage in the competitive world of lead generation.

21. Every "robocall" call placed to one of Defendants' prospective customers was done by, at the direction of, and/or for the benefit of, Defendants. Additionally, and/or in the alternative, CLASSMONEY.NET and VENTRIX ADVERTISING, INC. acted as an agent on behalf of all of the other Defendants named in this complaint when it placed "robocalls" to prospective customers – conduct which was ratified by the principles.

22. Defendants knew and/or should have known that they were using "robocalling" to generate leads. Additionally, Defendants failed to have adequate and proper policies and procedures in place to ensure that its agents and/or vendors were not using the illegal telephone solicitation method of "robocalling." Therefore, Defendants are directly liable for the "robocalls" made to Defendants' prospective customers.

23. Because Defendants make unsolicited robocalls to potential customers without prior consent, they have, and continue to violate the TCPA.

24. Upon information and belief, Defendants purchase information about consumers, including telephone numbers, and then place telemarketing calls to said consumers.

25. Upon information and belief, Defendants use equipment that constitutes an automatic telephone dialing system under 47 U.S.C. § 227(a) to place calls to consumers' cellular telephones.

26. Further, Defendants deliver pre-recorded messages in the telemarketing calls to consumers.

27. Defendants place pre-recorded calls to consumers notifying them that they could "qualify for a $5,920 education grant… that you never have to pay back." The pre-recorded message using an automatic dialing system is utilized by Defendants' to solicit customers. To learn more and inquire about the education grant, the consumer is instructed to visit "Classmoney.net," and encouraged to fill out an application.

28. Defendants made, and continue to make, these telemarketing calls to consumers nationwide without their prior written consent to do so.

29. Defendants made and continue to make these telemarketing calls to consumers throughout Florida and nationwide without their prior written express consent to do so.

30. The TCPA was enacted to protect consumers from unsolicited and repeated telephone calls, like those at issue here. Defendants made these calls despite the fact that neither Plaintiff, nor the other members of the putative Class, ever provided Defendants with their prior express consent to be called. By making the phone calls at issue in this Complaint, Defendants caused Plaintiff and the other members of the Class actual harm, including the aggravation and

nuisance that necessarily accompanies the receipt of unsolicited phone calls as well as the monies paid to their telephone carriers for the receipt of such calls. In addition, the calls violated their right of privacy and their statutory right to not be harassed by the illegal telephone solicitation method described herein.

### V.  FACTS RELATING TO PLAINTIFF

31.     On or around June 5, 2018, Plaintiff received a telephone call on his personal cellular telephone from the number 201-354-4060. Because the caller was not one of Plaintiff's contacts and Plaintiff did not otherwise know who was calling, he did not answer the call. Plaintiff nonetheless listened to the voicemail left on Plaintiff's cell phone by the unidentified caller.  The voicemail contained a pre-recorded message urging Plaintiff to visit "CLASSMONEY.NET" in order to receive a "$5,920.00 education grant that you do not need to pay back ever." Plaintiff received additional unsolicited and uninvited calls from this same number which left the same voicemail from "CLASSMONEY.NET," on at least 3 additional occasions, including on June 6th and June 7th, 2018. Plaintiff uses his personal cellular telephone as his residential line.

32.     When Plaintiff listened to the voicemail, there was roughly a five second delay before the message started playing. Additionally, the generic nature (the message doesn't mention Plaintiff's name or any specific identifiable information of Plaintiff in the voicemail) of the voicemail, the lack of a call back number, and overall sound of the voicemail made it apparent that it was clearly a pre-recorded message.

33.     Further this message did not provide Plaintiff with an option to be placed on CLASSMONEY.NET'S "Do Not Call List."

34.     Plaintiff did not provide his prior express written to be called by Defendants and did not interact with Defendants in any way prior to receiving a call from them.

35. Defendants are and were aware that they were placing unsolicited robocalls to Plaintiff and other consumers without their prior written express consent.

36. Plaintiff was damaged by Defendants' calls. His privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted phone calls forcing him to divert attention away from his work and other activities.

37. Plaintiff brings this action seeking an injunction requiring Defendants to cease all unsolicited calling activities, as well as an award of statutory damages to the members of the Class as provided under the TCPA, together with costs and reasonable attorneys' fees.

## V. CLASS ACTION ALLEGATIONS

38. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

39. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as, Nationwide Classes as follows:

   a. **Nationwide Class**. Plaintiff brings this action on behalf of himself and on behalf of a nationwide class, as follows:

      i. **Nationwide Robocall Class.** All persons in the United States who, within four years prior to the filing of this action, Defendants called on their cell phone using an artificial or prerecorded voice message or equipment with the capacity to dial numbers without human intervention, where the recipient did not give the cell phone number to Defendants for purposes of receiving automated marketing calls;

40.     Plaintiff respectfully reserves the right to amend, narrow, or expand the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified, including but not limited to the creation the subclasses based on geography and the timeframe when the unsolicited calls were received, as well as by persons listed on the do not call registry who received unsolicited calls.  Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

41.     Defendants' representations, practices and/or omissions were applied uniformly to all members of all Class, including any subclasses, so that the questions of law and fact are common to all members of the Class and any subclass.

42.     All members of the Class and any subclasses were and are similarly affected by the uninvited and unsolicited calls through the use of robocalling, and the relief sought herein is for the benefit of Plaintiff and members of the Class and any subclasses.

**Numerosity—Federal Rule of Civil Procedure 23(a)(1)**

43.     Based on the anticipated number of calls dialed, it is readily apparent that the number of consumers in both the Class and any subclasses is so large as to make joinder impractical, if not impossible. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

44.     The number and identifying information of class members will be ascertained throughout discovery.

**Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and (b)(3)**

45. Questions of law and fact common to the Plaintiff Class and any subclasses exist that predominate over questions affecting only individual members, including, *inter alia*:

46. Whether Defendants used an "automatic telephone dialing system" or "artificial or prerecorded voice" calls as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

47. Whether Defendants had prior express permission, or prior express written permission, to contact Plaintiff and the other members of the putative Class when they made calls to their cell phones using an automatic telephone dialing system or artificial or prerecorded voice;

48. Whether Plaintiff and the Class are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiff and the members of the putative Class are entitled to trebled damages.

**Typicality—Federal Rule of Civil Procedure 23(a)(3)**

49. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclasses, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class and any subclasses is common to the members of each. Further, there are no defenses available to Defendants that are unique to Plaintiff.

**Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4)**

50. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclasses.

51. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. The Class' interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)**

52. Certification also is appropriate because Defendants acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the final injunctive relief and declaratory relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of consumers who received calls, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**Superiority—Federal Rule of Civil Procedure 23(b)(3)**

53. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

54. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the

Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

55.     Certification of this class action is appropriate under Rule 23, *Federal Rule of Civil Procedure*, because the questions of law or fact common to the respective members of the Class and any subclasses predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

## COUNT I

### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii) (On Behalf of Plaintiff and the Class)
### (As to all Defendants)

56.     Plaintiff re-alleges and incorporates the allegations in paragraphs 1 through 55 above, as if fully set forth herein.

57.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . .." 47 U.S.C. § 227(b)(1)(A)(iii).

58.     "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07- 61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n. 23 (2007)).

59.     Defendants used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the

other members of the Class. Many of these calls, including at least one call to Plaintiff, utilized prerecorded messages.

60.     These calls were made without regard to whether or not Defendants had first obtained prior express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the § 227(b) putative Class when its calls were made.

61.     Furthermore, after October 16, 2013 the FCC required that Defendants obtain prior written express consent to place telemarketing calls to cellular telephone numbers. See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1831 (2012).

62.     Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system and an artificial or prerecorded voice message to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express permission.

63.     Defendants knew that it did not have prior express consent to make these calls, knew that it was using equipment that constituted an automatic telephone dialing system, and knew that it was using prerecorded messages. The violations were therefore willful or knowing.

64.     As a result of Defendants conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id.*

65.     Because Defendants knew that Plaintiff and the members of the putative Class had not given prior express consent to receive autodialed and prerecorded calls to their cellular

telephones, and knew that it used an automatic telephone dialing system and prerecorded voice messages to call the cell phones of Plaintiff and the other members of the Class without prior express permission, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendants for:

a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

b. Statutory damages of $500 per call;

c. Willful damages at $1,500 per call;

d. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

e. An injunction prohibiting Defendants from using an automatic telephone dialing system or artificial or prerecorded voice message to call numbers assigned to cellular telephones without the prior express written consent of the called party;

f. Reasonable attorney's fees and costs; and

g. Such further and other relief as this Court deems reasonable and just.

## XI. DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial on all issues so triable.

**Respectfully Submitted By,**

Dated: June 21, 2018

*/s/   Joshua H. Eggnatz*
Michael J. Pascucci (Fla. Bar No.: 83397)
MPascucci@JusticeEarned.com
Joshua H. Eggnatz (Fla. Bar No.: 0067926)

JEggnatz@JusticeEarned.com
Steven N. Saul (Fla. Bar No.: 1002827)
SSaul@JusticeEarned.com
**EGGNATZ | PASCUCCI**
5400 S. University Drive, Ste. 417
Davie, FL 33328
Telephone: (954) 889-3359
Facsimile: (954) 889-5913


Seth M. Lehrman (Fla. Bar No.: 132896)
seth@epllc.com
iris@epllc.com
**EDWARDS POTTINGER LLC**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820

*Attorneys for Plaintiff Louis Leo IV*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF on June 21, 2018, and that the foregoing document is being served via process server.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.